**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In Re:<br><br>Jan N. Evola,<br><br>Debtor. | Case No.: 25-17633-ABA<br><br>Adv. No.: 26-01007-ABA |
| MAUREEN P. STEADY, AS CHAPTER 7 TRUSTEE,<br><br>Plaintiff,<br><br>v.<br><br>MARCO EVOLA,<br><br>Defendant. | Chapter: 7<br><br>Hearing: October 6, 2026<br><br>Judge: Andrew B. Altenburg, Jr. |

## MEMORANDUM DECISION

Before this court is the Trustee's Motion for Summary Judgment. Doc. No. 13. For all the reasons that follow, the court grants the Trustee's Motion for Summary Judgment.

## JURISDICTION AND VENUE

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (E), and (F) and the court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334, 157(a), and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012 and June 6, 2025, referring all bankruptcy cases to the bankruptcy court. The record is now closed and pursuant to Federal Rule of Bankruptcy Procedure 7052, the court issues the following findings of fact and conclusions of law.

## BACKGROUND AND PROCEDURAL HISTORY

The adversary proceeding arises from the chapter 7 bankruptcy case filed by Jan N. Evola (the "Debtor") on July 25, 2025. Bankr. Case No. 25-17633-ABA ("Main Case"). The Debtor is represented by Eric S. Landau, Esquire. The Defendant, Marco Evola, is the Debtor's son. The Defendant is also represented by Eric S. Landau, Esquire. On August 13, 2025, the Debtor filed her schedules of assets and liabilities and statement of financial affairs (collectively, the

"Schedules"). Main Case Doc. No. 17. The Schedules did not reflect an ownership interest in real property located at 236 Chestnut Street, Mount Holly, New Jersey (the "Property").

Maureen P. Steady was appointed the chapter 7 Trustee (the "Trustee") and during her investigation of the Debtor and her affairs, the Trustee discovered that on or about January 9, 2025, the Debtor transferred $30,000.00 to Sterling Title, LLC (the "Title Company") for the purpose of assisting the Defendant in his purchase of the Property. The money was drawn from the Debtor's PNC Bank account. Doc. No. 13-3. According to the Debtor's PNC Bank statement, $35,000.00 was transferred to the PNC account on January 9, 2025. Doc. No. 13-9. The source of the funds was the Debtor's retirement account with UFCW Local 176 & Part. Employers Retirement Association administered by Empower from which Debtor withdrew more than $45,000.00 in the time period between January 1, 2025 and March 31, 2025. Doc. No. 13-4. The Debtor and the Defendant, under the penalty of perjury, executed a gift letter (the "Gift Letter") certifying that the Debtor was gifting her son, Marco Evola, $30,000.00 to buy the Property. Doc. No. 13-5. The Debtor and Defendant further certified that "no repayment is expected or implied on the Gift, either in the form of cash or future services." Doc. No. 13-5. On December 19, 2024, the Defendant submitted a loan application (the "Loan Application") listing a $30,000.00 cash gift from a parent. Doc. No. 13-6 at 3. The Trustee obtained the deed to the Property which reflects that the sole owner is the Defendant. Doc. No. 5-6.

On January 12, 2026, the Trustee, filed the Complaint in this Adversary Proceeding against the Defendant seeking to avoid as a fraudulent transfer the $30,000.00 that was transferred to the Defendant by the Debtor (hereinafter the "Transfer"). The Trustee seeks a judgment avoiding the Transfer identified in the Complaint pursuant to 11 U.S.C. §§ 544, 548, and applicable non-bankruptcy law, including the New Jersey Uniform Voidable Transactions Act ("UVTA"), recovering such transfer or the value thereof, including specifically the proceeds and profits derived by the Defendant from or as a result of such Transfer, pursuant to 11 U.S.C. § 550, and disallowing any claims of the Defendant pursuant to 11 U.S.C. § 502(d) until the Defendant satisfies the full amount of the transfers which form the subject of the Complaint. Doc. No. 1 at ¶1.

Under Section 548, the Trustee alleges that the Debtor made the Transfer to or for the benefit of the Defendant during the two-year period preceding the Petition Date. The foregoing Transfer was a transfer of an interest of the Debtor in property made within two years prior to the Petition Date. The Debtor received less than a reasonably equivalent value in exchange therefor. At the time of the Transfer, the Debtor was insolvent or became insolvent as a result of such Transfer. The Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital. The Debtor intended to incur, or believed that the Debtor would incur, debts and obligations that would be beyond the Debtor's ability to pay as such debts matured.

Under Section 544 and UVTA, the Trustee alleges the Transfer was fraudulent because the Debtor made the Transfer without receiving a reasonably equivalent value in exchange therefor and was engaged or was about to engage in business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to such business or transaction, and the Debtor intended to incur, or believed or reasonably should have believed, that the Debtor would incur

debts beyond the Debtor's ability to pay as such debts became due. The Debtor made the Transfer for the benefit of the Defendant while the Debtor was insolvent or became insolvent as a result thereof. Because the Transfer was made for no or inadequate consideration, the Debtor did not receive a reasonably equivalent value in exchange for such Transfer.

The Trustee asserts she is entitled to recover under Section 550 because the Transfer was made for the benefit of the Defendant, or the immediate or mediate transferee of the initial transferee which received the Transfer.

On February 10, 2026, the Debtor filed Amended Schedule A/B claiming a 50% interest in the Property. Main Case Doc. No. 106. The Amended Schedule A/B was unverified and the court advised the Debtor that Declaration About an Individual Debtor's Schedules (106 Declaration) needed to be filed. Main Case Doc. No. 107. The Debtor never filed the required 106 Declaration.

The Defendant filed an Answer on February 13, 2026, asserting eight affirmative defenses. Doc. No. 4. Strangely, the Defendant alleged as an Affirmative Defense that the Debtor, his mother, among others, "acted in bad faith and for improper purposes . . ." Doc. No. 4, *Sixth Affirmative Defense.* The Trustee filed a Motion for an Order Striking Certain Affirmative Defenses Pursuant to Fed. R. Civ. P. 12(f) (the "Motion to Strike") on February 17, 2026. Doc. No. 5. The Defendant failed to file an opposition to the Motion to Strike. Instead, the Defendant filed an Amended Answer and Counterclaim again asserting eight affirmative defenses and asserting three counterclaims against the Trustee and her counsel on behalf of both the Defendant and the Debtor And removing the Affirmative Defense previously asserted against the Debtor. Doc. Nos. 6 and 8. On March 18, 2026, the Court entered an order striking the Defendant's affirmative defenses two, three, four, six, seven, and eight because the Motion to Strike was unopposed. Doc. No. 9.

On March 12, 2026, prior to the court ruling on the Motion to Strike, the Trustee filed a Motion for an Order (A) Striking Defendant's Amended Answer and Dismissing Counterclaims and (B) for Sanctions (the "Second Motion to Strike"). On the evening the Defendant's opposition was due, the Defendant's counsel, Mr. Landau, contacted chambers via electronic mail requesting an extension of time to file an opposition. By order dated April 8, 2026, the court allowed the Defendant to file a late opposition and the court issued an Order to Show Cause Why Mr. Landau should not be sanctioned.[1] Thereafter, the Defendant filed a Cross-Motion seeking joinder of the Debtor and seeking to confirm that the asserted counterclaims were pending. Doc. No. 15. The Trustee filed a Certification in Opposition to Defendant's Cross-Motion to Dismiss the Trustee's Complaint and in Opposition to Plaintiff's Motion to Strike Counterclaims and Request for Sanctions. Doc. No. 16. On May 18, 2026, the court issued an Order and Memorandum Decision granting the Trustee's Second Motion to Strike, denying the Trustee's Motion for Sanctions, and denying the Defendant's Cross Motion to Dismiss the Trustee's Complaint and in Opposition to Plaintiff's Motion to Dismiss Counterclaims. Doc. No. 27.

On March 27, 2026, the Trustee filed the Motion for Summary Judgment. Doc. No. 13. On April 22, 2026, after the time had expired to file an opposition, Mr. Landau contacted chambers

[1] After a hearing, pursuant to Bankruptcy Rule of Procedure 9011, the court sanctioned Mr. Landau in the amount of $500.00 for his failures in this adversary proceeding in addition to $500.00 for his failures in the Main Case. Main Case Doc. No. 143.

via electronic mail requesting an adjournment of the scheduled April 28, 2026 oral argument on the Motion for Summary Judgment and additional time to file an opposition. Doc. No. 18. The Trustee filed a responsive letter. Doc. No. 19. On April 23, 2026, the court docketed a letter admonishing Mr. Landau for his repeated failures to file documents in a timely manner and failure to abide by the Local Rules of Bankruptcy Procedure. Doc. No. 20. The court permitted Mr. Landau to file a late opposition. The Defendant filed an Opposition to Summary Judgment on April 27, 2026 (the "Opposition"). Doc. No. 21. The Opposition included a certification by Mr. Landau and certification by the Debtor. Doc. Nos. 21-1 and 21-2. The Defendant did not provide a certification.

On March 25, 2026, the court appointed Ira R. Deiches as mediator. Doc. No. 10. On May 18, 2026, the court ordered that all pending motions, including the Trustee's Motion for Summary Judgment, should be held in abeyance until receipt of the mediator's report. However, the mediation never took place because the Defendant did not provide Mr. Deiches with either a signed consent form or his fee. Doc. No. 28. On September 2, 2026, the court scheduled a status conference for September 15, 2026. Doc. No. 29. On September 14, 2026, Mr. Landau contacted the Clerk's Office via telephone requesting an adjournment of the status conference. At the direction of the Clerk's Office, Mr. Landau submitted an adjournment request seeking to delay the status conference until October 13, 2026. On September 15, 2026, the court docketed the following Text Order:

> The court notes Mr. Landaus failure AGAIN to abide by the courts rules and requirements. D.N.J. LBR 5071-1 requires that an adjournment request must be made not later than 3 days before the hearing date. This information is also available on the courts public website under the Judges Info tab. The filing of these latest request after 9:00 p.m. last night for a hearing today clearly violates the Rule. Nevertheless, the court has determined that the status conference is no longer necessary and no appearances will be required today. Instead, the court will enter a scheduling order setting forth hearing dates and/or pleadings deadlines if any. The court reserves the right to hear the matters on the papers pursuant to D.N.J. LBR 9013-3(d). The court also reserves its rights to assess sanctions for failure to abide by the Federal and Local Rules and/or its orders.

On September 16, 2026, the court docketed a Scheduling Order directing the Trustee to file a response to the Opposition no later than September 29, 2026, and scheduling oral argument for October 6, 2026. Doc. No. 32. Additionally, the court cancelled Mr. Deiches' appointment due to the Defendant's failure to participate in the mediation process in good faith. Doc. No. 32. The Trustee filed a Response to the Opposition to Summary Judgment (the "Response") on September 17, 2026. Doc. No. 33. A hearing was held on October 6, 2026 at which the Trustee and her counsel appeared. As par for the course, neither Mr. Landau nor his client appeared.

## THE PARTIES' ARGUMENTS

The Trustee primarily moves for summary judgment under Section 548.[2] In support of the Motion for Summary Judgment, the Trustee argues that Defendant, as the Debtor's son, is an insider as defined by Section 101(31) of the Bankruptcy Code, 11 U.S.C. § 101(31). The Trustee identifies the avoidable transfer as the $30,000.00 transferred to the Defendant's Title Company on January 9, 2025. The Trustee also asserts the Transfer was made within two years of the Debtor's petition date.

In determining the Debtor was either insolvent or made insolvent by the Transfer, the Trustee examined the Debtor's contemporaneous bank account statements and her non-cash personal property, as reflected in the Schedules. The Trustee then subtracted the value of those assets which are subject to allowed exemptions. The Debtor's Citizens Bank account statement for the period from January 9, 2025 (which was the date of the gift) through February 7, 2025, reflects a balance of $301.23. Doc. No. 13-7. Debtor's UFCW Local 1776 Federal Credit Union account statement for the period from February 1, 2025 through February 28, 2025, reflects a starting balance of $148.57 and an ending balance of $110.00. Doc. No. 13-8. Debtor's PNC Bank account statement for the month of January 2025 reflects a $35,000.00 transfer from the Debtor's retirement account on January 9, 2025, and a $30,000.00 withdrawal on the same day. Doc. No. 13-8. The statement shows an account balance ranging from a high of $7,717.82 on January 9 to a low of $2,717.82 on January 6. Doc. No. 13-9. The only other cash assets owned by the Debtor in January 2025 were her retirement funds, which are either exempt under 11 U.S.C. § 522 or which constitute non-estate property under 11 U.S.C. § 541(c), and which are not therefore counted for purposes of the insolvency analysis. The Trustee observes that Debtor's Schedules reflect minimal personal property, including interests in two motor vehicles totaling $6,313.00 and miscellaneous personal property totaling $1,680.00, for a total of $7,993.00. The Trustee also calculated that $7,991.00 was the most cash the Debtor had at the time. The Trustee determined that the value of the Debtor's assets in January 2025 did not exceed $16,158.62. The Trustee notes that the Debtor claimed an exemption in the amount of $7,163.00 in her primary residence located in Delran, New Jersey, which was sold to Wilmington Savings Fund Society at sheriff's sale on November 30, 2023, and a deed was issued to Wilmington Savings Fund Society on December 5, 2023. The Trustee concluded that after subtracting the exemption of $7,163.00 from the $16,158.62 value of the Debtor's total assets ($16,158.62 - $7,163.00) the net total asset value was $8,995.62. Based upon the Debtor's Schedules, which reflect total liabilities of $29,689.00, the Debtor was therefore insolvent under Section 101(32)(A), 11 U.S.C § 101(32)(A).

Due to the convoluted and often circular and contrary arguments and implications set forth by Mr. Landau, the court will provide an exhaustive recitation of the Defendant's Opposition[3] so there is no question that the court did not fully and fairly consider all of the Defendant's assertions.

---

[2] The Trustee notes that under Section 544 and UVTA the summary judgment analysis for those causes of action is identical to the analysis under Section 548. Doc No. 13-1 at 5-6, n.4. The court will only consider Section 548.

[3] While the court frames the Opposition as the Defendant's arguments, it is unclear whether the Defendant has played any role in the litigation. The Defendant has not provided any certifications. The Defendant failed to participate in the court ordered mediation. The only certifications before the court are Mr. Landau's and the Debtor's. In the court's view, this adversary litigation is being directed by Mr. Landau and the Debtor seemingly without any participation from the Defendant.

The Defendant argues the Trustee's motion is premature because threshold issues remain unresolved as a result of the Defendant's filing of a cross-motion to dismiss and a joinder motion. The Defendant asserts essential facts such as the complete closing file, escrow and disbursement instructions, and lender underwriter materials necessary to opposed summary judgment are unavailable without discovery. The Defendant argues that such documents are necessary for the court to determine how the funds were applied, who actually received the funds, what obligations were satisfied or secured, and whether the Debtor received value in connection with the transfer. The Defendant further argues that the lender's underwriting file is essential because the "file may reveal what was disclosed, what was required for loan approval, and whether the "gift" designation was used solely for financing purposes rather than as a legal conclusion that the transfer was gratuitous." Doc. No. 21 at 6. The Defendant also asserts a need for discovery to challenge the Trustee's insolvency analysis by obtaining the Debtor's complete financial picture at the time of the Transfer. The Defendant maintains that discovery from the Title Company and other third parties is necessary to establish the funds transferred by Debtor to the Title Company were then transferred into the Defendant's control or received by the Defendant. The Defendant also declares that discovery is necessary to develop the factual record regarding the Debtor's living arrangements, the purpose of the transfer, the parties' understanding of the transaction, the Debtor's financial obligations, and any substitute housing benefits allegedly received. Doc. No. 21 at 7.

Next, the Defendant argues the Trustee's insolvency analysis is not suitable for summary judgment. The Defendant alleges the Trustee relies on selective financial information and petition date schedules to draw conclusions about the Debtor's financial condition at the time of the transfer, but the Defendant disputes which assets and liabilities should be included and how they should be valued as of January 9, 2025. The Defendant argues the Trustee improperly relies on petition date schedules to draw conclusions about the Debtor's financial condition on January 9, 2025 when UVTA asks whether the Debtor was insolvent at the time of the transfer or became insolvent because of the transfer. See N.J.S.A. § 25:2-27. The Defendant asserts that Petition date schedules cannot substitute for transfer date proof where there is a temporal gap and unresolved valuation disputes. Doc. No. 21 at 9. The Defendant contends that the insolvency analysis requires fact intensive determinations that necessitate discovery and cannot be resolved as a matter of law on the present record. Doc. No. 21 at 4 (citing *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007); *Dowling v. City of Phila.*, 855 F.2d 136, 139-40 (3d Cir. 1988)).

The Defendant asserts the Trustee has not proven the Defendant is the proper recovery target because the money was transferred to the Title Company and the record lacks the escrow and disbursement evidence necessary to trace receipt and control of the funds. The Defendant contends the record does not establish the operative closing mechanics, the escrow instructions, the settlement statement, or the disbursement ledger necessary to show who actually received, controlled, or benefited from the transfer for purposes of recovery. Recovery under § 550 requires proof of receipt, dominion, or control over the transferred funds, none of which can be established on the present record. Doc. No. 10 at 12. The Defendant argues that the Trustee has not established that the Defendant, rather than the Title Company or some other closing participant, is the correct recovery target. Doc. No. 21 at 11.

Finally, the Defendant argues the Gift Letter and Loan Application are not conclusive proof that the Transfer was gratuitous. The Defendant posits the Gift Letter and application merely show how the Transfer was characterized for underwriting purposes. The Defendant insists the Gift Letter and Loan Application do not establish, as a matter of law, that the Debtor received no value, no housing benefit, and no equitable or beneficial interest in the property. Doc. No. 21 at 11. The Defendant argues surrounding facts support a competing inference: that the Transfer was used to secure housing for the Debtor and her husband after foreclosure and, thus, a genuine issue of material fact exists. The Defendant contends the Trustee has failed to establish the absence of a genuine dispute as to whether the Debtor received reasonably equivalent value because UVTA allows "value" to include benefits beyond direct monetary repayment and the statutory definition is broader than repayment and includes property transferred or the securing or satisfaction of obligations. N.J.S.A. § 25:2-24; N.J.S.A. § 25:2-27.

In her Response, the Trustee observes that the Landau Certification is silent concerning (1) what efforts, if any, he undertook to obtain allegedly critical documents from the Defendant's lender and/or title company, (2) why documents such as the Debtor's own bank statements are supposedly unavailable, and (3) why, if Mr. Landau believed that third-party discovery was necessary, he did not seek an order under Fed. R. Civ. P. 56(d) permitting him additional time to take discovery or otherwise obtain the critical materials. Doc. No. 33 at ¶¶ 5-6. The Trustee also argues that the court should disregard the Landau Certification because it was not made on personal knowledge as required by Fed. R. Civ. P. 56(c)(4). The Trustee asserts that the Debtor's Certification addresses only her subjective intent in providing $30,000.00 to the Defendant, which is irrelevant to the analysis under Section 548(a)(1)(B). The Trustee argues the Defendant has failed to set forth any specific facts from the record showing the existence of a genuine issue of fact and, thus, has failed to carry his burden. Doc. No. 33 at ¶ 23. Finally, the Trustee asserts that because the Opposition fails to rebut the evidence set forth in the Summary Judgment Motion, this Court may treat the Trustee's factual recitation as undisputed pursuant to Rule 56(e)(2) and grant the motion pursuant to Rule 56(e)(3).

## THE RELEVANT LAW

A court may grant summary judgment under Federal Rule of Civil Procedure 56(a), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must construe facts and inferences in a light most favorable to the non-moving party. *See e.g.*, *Lemaire v. Hartford Life & Acc. Ins. Co.*, 69 F. App'x 88, 91 (3d Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *SEC v. Hughes Capital Corp.*, 124 F.3d 449, 452 (3d Cir. 1997). The moving party bears the burden of proving that no genuine issue of material fact is in dispute. *Celotex Corp.*, 477 U.S. at 323.

Once the movant carries its burden, if the non-moving party fails to properly address the movant's factual assertion, the court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Additionally, the nonmoving party must present actual evidence, not mere allegations. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The court must then only determine whether there is a genuine issue for trial, not weigh the evidence or determine the truth of the matter. *Id.* at 248-49. Material facts are those that might affect the action's outcome under the law; fact issues must be genuine, not merely some alleged factual dispute. *Born v. Monmouth Cnty. Corr. Inst.*, 2009 U.S. Dist. LEXIS 58469, 2009 WL 2058837, at *3 (D.N.J. July 9, 2009).

Section 548(a)(1)(B) of the Bankruptcy Code, 11 U.S.C. § 548(a)(1)(B), provides:

> (a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
>
> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

Section 550, 11 U.S.C. § 550 provides that:

> (a) Except as otherwise provided in this section…the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
>
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

> (2) any immediate or mediate transferee of such initial transferee.

The Bankruptcy Code defines "insolvent" to mean:

> (A) with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—
>
> (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and
>
> (ii) property that may be exempted from property of the estate under section 522 of this title [11 USCS § 522];

11 U.S.C. § 101(32).

**DISCUSSION**

**<u>Has the Trustee Carried her Burden?</u>**

The Trustee has moved for summary judgment seeking to avoid the Transfer pursuant to Section 548(a)(1)(B) and seeking recovery of the $30,000.00 pursuant to Section 550. Section 548(a)(1)(B) requires the Trustee to demonstrate that the Debtor did not receive reasonably equivalent value for the Transfer and that the Debtor was insolvent or became insolvent at the time of the transfer.

In support of her Motion for Summary Judgment, the Trustee has put forth the following facts:

> (1) the Debtor transferred not less than $30,000.00 to the Title Company for the benefit of the Defendant within two years before her bankruptcy filing (Doc. No. 13-3);
> (2) the Debtor acknowledged under penalty of perjury that the transfer was a gift pursuant to the Gift Letter (Doc. No. 13-5);
> (3) the Debtor expressly disclaimed any interest in the Defendant's Property in the Gift Letter (Doc. No. 13-5);
> (4) the Defendant acknowledged in the Loan Application that the transfer was in fact a gift (Doc. No. 13-6);
> (5) the Defendant is an insider of the Debtor by virtue of his relationship as her son;
> (6) the Defendant is the sole owner of the property, as reflected in the deed (Doc. No. 5-6); and
> (7) the Debtor was insolvent at the time of the transfer as evidenced by her bank account records, financial information, and schedules of assets and liabilities.

In his Loan Application, the Defendant acknowledged "I have not entered into any other agreement written or oral, in connection with this real estate transaction." Doc. No. 13-6 at 5. The

Loan Application also provided that the Defendant would be the sole owner of the Property. Doc. No. 13-6 at 9.

The Trustee provided a detailed analysis of the Debtor's finances at the time of the Transfer, which showed the Debtor's total net asset value at the time of the Transfer was $8,995.62. Based upon the Debtor's Schedules, which reflect total liabilities of $29,689.00 the Debtor was therefore insolvent under Section 101(32)(A). The Trustee has carried her burden to show that the Transfer was made within two years of the filing of the bankruptcy Petition to Debtor's son, an insider as defined by Section 101(31)(A)(i), and that the purpose of the Transfer was to benefit the Defendant by providing money to assist in the purchase of the Property. The Transfer was a gift from the Debtor to Defendant and as such the Debtor could not claim any ownership in the Property or value given in return. Thus, the Trustee has established that the Debtor did not receive reasonably equivalent value as part of the transaction. The Trustee's analysis of the Debtor's schedules and financial statements establishes that at the time of the Transfer the Debtor was either insolvent or became insolvent because of the Transfer.

**Is the Motion for Summary Judgment Premature?**

Because the Trustee has carried her burden to establish a voidable transfer under Section 548(a)(1)(B), the burden shifted to the Defendant to provide concrete factual evidence to rebut the Trustee's facts and conclusions. The Defendant has completely failed to provide any facts that rebut the Trustee's case.

The Defendant asserts that this matter is not ripe for summary judgment because he needs to obtain such items as the complete closing file, escrow and disbursement instructions, and the lender underwriter materials. This case has been pending for over nine months, and the court is unaware of any efforts the Defendant has made to obtain such documents despite the fact the court's scheduling order closed discovery on July 3, 2026 and scheduled the trial for October 7, 2026. The Defendant only speculates what these documents may reveal. The Defendant has not provided a certification regarding his understanding of the Transfer and the role the gift of $30,000.00 would play in the purchase of the Property. The court assumes that the Defendant would have personal knowledge of the Transfer and the purchase of the Property, yet he has failed to provide any facts on personal knowledge that would even suggest that the allegedly necessary documents will reveal relevant information.[4]

The Defendant also asserts that he needs discovery to obtain his own mother's financial statements. The Defendant is represented by Mr. Landau who also represents the Debtor. The court finds it curious that Mr. Landau did not use the Debtor's financial statements to prepare the Opposition. The court assumes that Mr. Landau has all the relevant documents because such documents were necessary to the preparation of the Debtor's Petition and should have been provided to the Trustee at any one of the **eleven** 341 Meetings scheduled by the Trustee. The

[4] With regard to the Defendant's claim that discovery is necessary to determine the Debtor's intent when transferring the $30,000.00. Intent is not an element of a claim under Section 548(a)(1)(B) and, accordingly, further discovery is not necessary on this issue. *In re Stanko,* Nos. 09-10704-TPA, 13-1063-TPA, 2014 Bankr. LEXIS 678, at *5, 2014 WL 667696 (Bankr. W.D. Pa. Feb. 20, 2014) (observing that Section 548(a)(1)(B) does not contain an intent requirement); *In re Lovesac Corp.*, 422 B.R. 478, 483 (Bankr. D. Del. 2010).

Defendant has had ample time to pursue discovery and has failed to do so. The Defendant has failed to move this court pursuant Rule 56(d) for additional time to take discovery or to provide any certification on personal knowledge that would satisfy this court that this Motion for Summary Judgment is premature. An opposition unsupported by facts that relies solely upon implications of possible undiscovered relevant information does not support a conclusion that the Trustee's Motion for Summary Judgment is premature.

**Has the Defendant Rebutted the Trustee's Evidence that Reasonably Equivalent Value Was not Received?**

The Defendant repeatedly asserts that the Gift Letter is not conclusive proof that the Transfer was made without the Debtor receiving reasonably equivalent value in return. The Defendant has not provided any facts or law to rebut the Trustee's evidence which shows that both the Defendant and Debtor signed the Gift Letter under penalty of perjury and that the Gift Letter stated that "no repayment is expected or implied on the Gift, either in the form of cash or future services." Doc. No. 13-5. The Defendant has not provided any evidence to rebut the Loan Application which characterizes the Transfer as a gift (Doc. No. 13-6), or the Defendant's acknowledgement in the Loan Application that "I have not entered into any other agreement written or oral, in connection with this real estate transaction." Doc. No. 13-6 at 5. This acknowledgement is directly contradictory to the Defendant's assertion that the Transfer was made pursuant to an agreement to provide housing for his parents at some future date or an ownership interest in the Property. The Defendant has not rebutted the Trustee's evidence that he is the sole owner of the Property as evidenced by the Loan Application and the deed to the Property.[5] Doc. No. 13-6 at 9 and Doc. No. 5-6.

A gift by its very nature is given without any expectation of the giver reaping a benefit or value from the gift. "Gift" is defined as "[t]he voluntary transfer of property to another without compensation." BLACK'S LAW DICTIONARY (12th ed. 2024). "A gift is a transfer without consideration." *Jennings v. Cutler*, 288 N.J. Super. 553, 564, 672 A.2d 1215, 1220 (Super. Ct. App. Div. 1996) (quoting *Herr v. Herr,* 13 N.J. 79, 88, 98 A.2d 55 (1953)). *See also Leggett v. Rose*, 776 F. Supp. 229, 235 (E.D.N.C. 1991) ("It must be noted that a gift, by definition, cannot be based on consideration.") (citing BLACK'S LAW DICTIONARY 619 (5th ed. 1979)).

Under New Jersey law three elements must be satisfied for a gift to have occurred: (1) the donor must have the intent to give, (2) the donor must make an actual or symbolic delivery of the subject matter of the gift, and (3) the donor must absolutely relinquish ownership and dominion over the subject matter of the gift. *Estate of Curtis v. Gant*, No. A-3633-21, 2023 N.J. Super. Unpub. LEXIS 973, at *3-4 (Super. Ct. App. Div. June 15, 2023) (relying upon *Farris v. Farris Eng'g Corp.*, 7 N.J. 487, 500-01, 81 A.2d 731 (1951) and *Pascale v. Pascale*, 113 N.J. 20, 29, 549 A.2d 782 (1988)). These elements are designed to ensure that the donor "clearly intended a gift and understood that the thing given was *irretrievably gone.*" *Estate of Curtis*, 2023 N.J. Super. Unpub. LEXIS 973, at *3-4 (quoting *In re Dodge*, 50 N.J. 192, 216-17, 234 A.2d 65 (1967))

[5] As noted above, Mr. Landau filed unverified Amended Schedules in the Main Case claiming a 50% ownership interest in the Property. Because the Debtor failed to file the 106 Declaration the Amended Schedules are not competent evidence.

(emphasis in original). To be absolutely clear on the nature of a gift, the Superior Court further commented, "the law does not recognize what defendant has referred to as a 'repayable gift.'" A gift is a gift, and a loan is a loan. Indeed, the very definition of a gift precludes defendant's claim to an oxymoronic "repayable gift." *Id.*

The Defendant has not provided any facts that would contradict the explicit words of the Gift Letter or the representations and acknowledgement made in the Loan Application. The Debtor expressed an intent to give the Defendant $30,000.00. The Debtor transferred $30,000.00 to the Title Company. By such transfer the Debtor relinquished ownership and dominion over the $30,000.00. The Defendant has not provided any evidence that theTransfer was a loan or contribution to an ownership interest such that the Debtor received reasonably equivalent value.[6]

**Is the Trustee's Insolvency Analysis Flawed?**

The Defendant argues the Trustee's insolvency analysis is flawed because it relies on Petition date schedules to draw conclusions about the Debtor's financial condition on January 9, 2025. The Defendant asserts that Petition date schedules cannot substitute for transfer date proof where there is a temporal gap and unresolved valuation disputes. Doc. No. 13 at 9. The Trustee examined the Debtor's bank accounts, retirement accounts, and schedules to determine the Debtor's assets and liabilities at the time of the transfer. The Defendant does not dispute the amount of the Debtor's liabilities and does not provide any evidence that Debtor's liabilities differed at the time of the Transfer, or that the Debtor's cash assets and non-exempt assets differed from those used in the Trustee's insolvency analysis. The Defendant implies that the Debtor's non-cash assets may differ from those included in the Trustee's analysis but does not provide any evidence or facts to support this implication.[7] As previously mentioned, Mr. Landau represents both the Debtor and the Defendant. The court presumes that if there was any evidence that the Debtor's assets and liabilities differed from those used in the Trustee's analysis, Mr. Landau would have access to such evidence and should have provided it to the court, but the Opposition is bereft of any facts rebutting the Trustee's analysis. The Defendant has failed to demonstrate that the Debtor was not insolvent or made insolvent at the time of the Transfer.

The Defendant contends that the Trustee has not established that the Defendant is the proper recovery under Section 550. The Defendant argues that the Trustee has not established that the Defendant, rather than the Title Company or some other closing participant, is the correct recovery target pursuant to the dominion and control test. Doc. No. 21 at 11.

The Trustee may recover from an entity "for whose benefit the transfer was made." 11 U.S.C. § 550(a)(1). "To recover from a transfer beneficiary under [Section] 550(a)(1), a trustee must show that the benefit: (i) must actually have been received by the beneficiary; (ii) must be

---

[6] The court will not address the Defendant's arguments regarding "value" under UVTA because the Trustee has specifically moved for summary judgment under Section 548.

[7] To the extent that the Defendant is implying that the Debtor possessed a valuable ownership interest in her primary residence, the court rejects this implication. This court has already held that Debtor was divested of any ownership interest in her primary residence by the November 30, 2023 sheriff's sale. Main Case Doc. No. 50.

quantifiable; and (iii) must be accessible to the beneficiary." *In re Samson Res. Corp.*, No. 15-11934 (BLS), 2022 Bankr. LEXIS 2163, 2022 WL 3135288, at *7 (Bankr. D. Del. Aug. 4, 2022).

Neither the Debtor nor the Defendant deny that the Transfer was made by Debtor to the Title Company so that the Defendant could purchase the Property. The Defendant does not assert that the transaction failed to close or that the $30,000.00 was not used in the purchase of the Property. The Defendant merely implies that some other entity involved in the closing was the transferee rather than the Defendant. The Defendant has not provided the court with any evidence that the $30.000.00 was not used for its intended purpose by its intended recipient. The Defendant was the actual beneficiary of the Transfer, the Defendant received the benefit of the Transfer, and the Transfer was used in the purchase of the Property. The Defendant's implications regarding who was the actual beneficiary of the Transfer are entirely inconsistent with his own pleadings and arguments. There is no doubt in the court's mind based upon the Defendant's and the Debtor's own representations that the Defendant is "the entity for whose benefit such transfer was made."[8]

## CONCLUSION

For all of the foregoing reasons, the court concludes that summary judgment in favor of the Trustee should be entered. The Trustee has carried her burden to demonstrate that the Transfer was avoidable under Section 548(a)(1)(B) and recovery of $30,000.00 from the Defendant is appropriate pursuant to Section 550. The Defendant has failed to provide any evidence to rebut the Trustee's evidence. The Trustee's Motion for Summary Judgment is hereby granted.

Dated: October 7, 2026

/s/ Andrew B. Altenburg, Jr., Judge
United States Bankruptcy Court
For the District of New Jersey

---

[8] The Title Company was a mere financial conduit and as such did not exercise dominion or control over the Transfer. *See McHale v. Boulder Capital LLC (In re 1031 Tax Grp., LLC)*, 439 B.R. 47, 69 (Bankr. S.D.N.Y. 2010) (title company who acted as escrow agent was a mere conduit for the transferred funds, exerting no dominion over the funds transferred); *In re Ogden*, 314 F.3d 1190, 1202 (10th Cir. 2002) (finding that an escrow agent was not an initial transferee). Thus, the settlement paperwork is unnecessary to resolve this issue.